IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| LORIANN LUDWIG, | * | |
| *Plaintiff,* | * | |
| v. | * | Civil Action No. 1:21-cv-01274-SAG |
| RAYMOND G. STRUBIN, individually, and in his official capacity | * | |
| | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant, Raymond G. Strubin, individually and in his official capacity as a circuit court judge, by his undersigned counsel, moves to dismiss the complaint or, in the alternative, for summary judgment, and in support submits this memorandum of law.

**INTRODUCTION**

Plaintiff, Loriann Ludwig, brings a five-count complaint against Defendant arising out of her employment with the Circuit Court for Garrett County, Maryland. She alleges that prior to her employment with the court the parties had a consensual romantic relationship that later turned into "quid pro quo" harassment and non-consensual sex. Ms. Ludwig brings three tort claims against Defendant individually—battery (Count I), false imprisonment (Count II), and intentional infliction of emotional distress (Count III)—and two 42 U.S.C. § 1983 civil rights claims against Defendant in his official capacity alleging discrimination based on sex and sexual harassment (Count IV) and hostile work

environment based on sex (Count V) in violation of her equal protection rights under the Fourteenth Amendment.

Ms. Ludwig lacks standing to bring these claims. When she filed for bankruptcy in late 2020, Ms. Ludwig failed to disclose any of her then-existing alleged claims against Defendant, which she now brings in this action, in her bankruptcy schedules. Because these unscheduled claims against Defendant were neither administered nor abandoned, they remain the property of the bankruptcy trustee and Ms. Ludwig lacks standing to bring them here. Moreover, Ms. Ludwig is bound by her prior inconsistent statements made in her bankruptcy proceeding and is judicially estopped from bringing this action.

Counts IV and V are not viable as a matter of law. Eleventh Amendment immunity bars all 42 U.S.C. § 1983 official capacity claims for money damages against Defendant.

## FACTUAL BACKGROUND

### THE PARTIES' ALLEGED RELATIONSHIP AND MS. LUDWIG'S EMPLOYMENT.

The complaint alleges that Ms. Ludwig and Defendant commenced a romantic relationship in 2009, prior to Defendant's appointment as judge in 2014. (ECF No. 1, Compl. at ¶ 42-44.) Defendant allegedly arranged for Ms. Ludwig to obtain employment with the circuit court despite her lack of qualifications. (*Id.* at ¶¶ 45-52.)

In 2015, after an alleged six-year consensual but secret romantic relationship, Ms. Ludwig allegedly attempted to end the relationship, but Defendant allegedly told her he would fire her. (*Id.* at ¶ 53.) Ms. Ludwig alleges she continued the consensual sexual relationship with Defendant to maintain her job and health insurance. (*Id.* at ¶¶ 54, 61-62.)

### The ALLEGED APRIL 29, 2019 SEXUAL ENCOUNTER AT WORK.

According to Ms. Ludwig, on her birthday (April 29, 2019) and during work hours, Defendant communicated that he wanted to have sex with Ms. Ludwig, and she purportedly went to his chambers and said she "would not be having sex with him" at that time. (*Id.* at ¶¶ 69-70.) Ms. Ludwig claims that Defendant would not allow her to leave his chambers and forced her to have sex with him, without her consent, during work hours. (*Id.* at ¶ 70.) Ms. Ludwig claims that she instantly resigned by leaving work and never returning. (*Id.* at ¶ 71.) Ms. Ludwig alleges that she then began treatment for her ongoing, year-long, and extensive alcoholism/substance abuse. (*See id.* at ¶¶ 72-73.)

### MS. LUDWIG FILED A CHARGE OF DISCRIMINATION WITH THE EEOC.

On October 24, 2019, Ms. Ludwig filed a charge of discrimination against the "Circuit Court for Garrett County" and the "Board of County Commissioners of Garrett County" with the EEOC/MCCR alleging sex discrimination and retaliation. Exhibit 2 (Exhibit 1 omitted to conform to ECF Numbering). The charge contained no allegations regarding the now alleged April 29, 2019 sexual incident. *Id.* Nor was the charge amended to include them. On April 9, 2021, the EEOC issued a right to sue notice. Exhibit 3.

### THE INSTANT SUIT.

On May 24, 2021, Ms. Ludwig filed suit asserting five causes of action: three counts of intentional torts against Defendant individually—battery, false imprisonment, and intentional infliction of emotional distress—and two 1983 claims against Defendant in his official capacity—sex discrimination and sexual harassment (Count IV) and hostile work environment (Count V) in violation of the equal protection clause. (*Id.* at ¶¶ 82-115.)

3

**MS. LUDWIG'S 2020 DISCHARGE IN BANKRUPTCY.**

On September 9, 2020, Ms. Ludwig filed a Chapter 7 bankruptcy petition. Exhibit 4.[1] The Petition identifies $46,701.15 in assets and $129,481.10 in liabilities. *Id*. at 8.

On Schedule A Ms. Ludwig reported a "Claim for wrongful termination" initially valued at $0. *Id*. at 14, ¶ 33. In the Statement of Financial Affairs (Form 107), Ms. Ludwig disclosed that she was a party to an administrative charge pending before the Maryland Commission on Civil Rights/Equal Employment Opportunity Commission against the "Board of County Commissioners of Garrett County." *Id*. at 39, ¶ 9. On November 13, 2020, after the meeting of creditors, Ms. Ludwig amended her schedules valuing the "Claim for wrongful termination" at $50,000 in Schedule A/B, Exhibit 5 at 7, ¶ 33, and seeking an exemption in the amount of $50,000 for the wrongful termination claim citing § 11-816 of the Criminal Procedure Article, Maryland Annotated Code, in Schedule C. Exhibit 5 at 12.[2]

Ms. Ludwig signed an Amended Declaration declaring "under penalty of perjury" that she read her amended bankruptcy filing identifying that her "Claim for wrongful

---

[1] This Court may take judicial notice of public records such as the records of a plaintiff's bankruptcy proceedings. *Musari v. Loans*, No. PWG-15-3028, 2016 WL 4124227, at *4 (D. Md. Aug. 3, 2016).

[2] Criminal Procedure Article § 11-816(b) exempts "an award [made] under this subtitle" from execution or attachment. A victim of a crime may submit a claim to the Criminal Injuries Compensation Board, Md. Code Ann., Crim. Proc. § 11-809, and receive an award ordered by the Board and payable from the Criminal Injuries Compensation Fund, Md. Code Ann., Crim. Proc. § 11-819.

termination" was valued at $50,000 and that the amended filing was "true and correct to the best of [her] information and belief." *Id.* at 13.

Ms. Ludwig received an Order of Discharge on December 29, 2020. Exhibit 6.

## ARGUMENT

**I.     STANDARD OF REVIEW.**

When a defendant moves to dismiss a claim for lack of standing, courts address the motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Taubman Realty Group Ltd. Partnership v. Mineta*, 420 F.3d 475 (4th Cir. 2003). A motion to dismiss for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint, *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005), and may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true," *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).

The Fourth Circuit has not determined conclusively whether a motion urging dismissal based on Eleventh Amendment immunity is analyzed under Rule 12(b)(1) or Rule 12(b)(6). *See Andrews v. Daw,* 201 F.3d 521, 525 n. 2 (4th Cir. 2000) ("Our cases

have been unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)."). Recognizing that "Eleventh Amendment immunity is not a 'true limit' on this Court's subject matter jurisdiction" this Court has nonetheless analyzed the issue under Rule 12(b)(1) "because it ultimately challenges this Court's ability to exercise its Article III power." *Beckham v. Nat'l R.R. Passenger Corp.,* 569 F.Supp.2d 542, 547 (D. Md. 2008) (internal citations omitted)).

To survive a motion to dismiss for failure to state a claim on which relief can be granted under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court is required to "take the facts in the light most favorable to the plaintiff," the Court "need not accept legal conclusions couched as facts." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (internal quotation marks omitted).

"[I]n determining whether to dismiss the complaint," the Court may consider documents attached to the motion to dismiss that are "integral to and explicitly relied on in the complaint," *American Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) and "[w]hen the bare allegations of the complaint conflict with" those "exhibits or other documents," "the exhibits or documents prevail." *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 683 (D. Md. 2001) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

## II.   Ms. Ludwig Lacks Standing to Bring this Action.

### A.   Unscheduled property, including causes of action and claims, remain with the bankruptcy estate upon discharge.

Upon filing her petition for bankruptcy, all of Ms. Ludwig's "legal or equitable [property] interests" became part of the bankruptcy estate, 11 U.S.C. § 541(a)(1), including any interest in "causes of action that arose out of events occurring prior to the filing of the bankruptcy petition," *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 342 (4th Cir. 2013). That is because "[p]roperty of the estate includes *all* of the debtor's interests in any cause of action that has accrued prior to the bankruptcy petition." *Miller v. Pac. Shore Funding*, 287 B.R. 47, 50 (D. Md. 2002) (citation omitted) (emphasis in original). Bankruptcy law requires a debtor to disclose those interests by filing a "schedule of assets" in the initial petition consistent with the two goals underpinning the bankruptcy laws—effecting a fresh start for the debtor and ensuring equal treatment of the creditors. 11 U.S.C. § 521(a)(1).

Scheduled assets may be administered or abandoned by the bankruptcy trustee or exempted. 11 U.S.C. 522(b)(3)(A). To be exempt, property must be: (i) listed as a claimed exemption on the schedule of property; (ii) not subject to a successful objection by the trustee; and (iii) authorized by statute. 11 U.S.C. 522(l). Property in the bankruptcy estate may be abandoned: (1) by the trustee after notice and hearing; (2) by court order after notice and hearing; or (3) by operation of law if the property listed in the schedules has not been administered when the bankruptcy case closes. 11 U.S.C. § 554(a)-(c).

But a pre-bankruptcy asset that is unscheduled (*i.e.*, not identified by the debtor), is neither administered, exempted, nor abandoned. "[P]roperty of the estate that is not

7

abandoned . . . and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d). For that reason, "[i]f the debtor's schedule does not disclose a cause of action that accrued pre-petition, that cause of action remains the property of the estate after the bankruptcy case is closed." *Nicholas v. Green Tree Servicing, LLC*, 173 F. Supp. 3d 250, 255 (D. Md. 2016) (citation omitted).

### B.    Ms. Ludwig did not schedule any of her instant causes of action.

Official Form 106A/B (Schedule A/B) requires a debtor to list all "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment" and all "Other contingent and unliquidated claims of every nature." Exhibit 4 at 14, ¶¶ 33, 34. Ms. Ludwig identified a "Claim for wrongful termination" valued at $50,000 for which she sought exemption under Criminal Procedure Article § 11-816—which exempts an award made by the Criminal Injuries Compensation Board from attachment or execution. Exhibit 5 at 12. She did not list any causes of action or claims against Defendant in her schedules, nor did she amend her Schedule A/B to include any claims against Defendant as potential assets—much less the instant intentional torts and constitutional civil rights claims.

All the operative facts allegedly giving rise to the five instant causes of action occurred on or before April 29, 2019, when Ms. Ludwig alleged she last reported to work. *See e.g.*, *Borlo v. Navy Fed. Credit Union*, 458 B.R. 228, 233 (D. Md. 2011) (finding negligence claim accrued before the filing of debtor's bankruptcy case). Because all the causes of action brought in the complaint "arose out of events occurring prior to the filing of the bankruptcy petition" in September 2020, those causes of action are property of the bankruptcy estate. *Wilson*, 717 F.3d at 342.

## C. The claims brought in the complaint are not exempted under Criminal Procedure Article § 11-816 and remain in the estate.

Ms. Ludwig scheduled a claim for wrongful termination—a claim which lies against her employer. She cannot bring three intentional tort and two equal protection civil rights claims against Defendant—who was not her employer—based on the claimed exemption. *See* Exhibit 4 at 12. Criminal Procedure Article § 11-816 exempts an award made by the Criminal Injuries Compensation Board, and thus, functions as the state equivalent to 11 U.S.C. § 522(d)(11)(A)—"an award under a crime victim's reparation law." The Maryland General Assembly enacted the Criminal Injuries Compensation Act in 1968 "for the purpose of enabling innocent victims of certain crimes to receive State-funded compensation for physical injury sustained by them as a result of the crime." *Opert v. Crim. Injuries Comp. Bd.,* 403 Md. 587, 590 (2008) (citation omitted).

But the claims advanced in the complaint are not brought under Criminal Procedure Article § 11-816 nor made to the Criminal Injuries Compensation Board—a state administrative agency subject to the Maryland Administrative Procedure Act and whose decisions are subject to judicial review. Md. Code Ann., Crim. Proc. § 11-815. Instead, the complaint brings three intentional tort claims and two equal protection civil rights claims against Defendant seeking money damages. Criminal Procedure Article § 11-816 exempts an "award" by the Board, not a cause of action in tort against a defendant. Here, the complaint neither alleges that Ms. Ludwig filed a claim nor received an award from the Board. The exemption for a "Claim for wrongful discharge" does not apply to the instant claims and these non-exempted unscheduled claims remain with the bankruptcy estate.


### D. Ms. Ludwig lacks standing to bring her causes of action and the trustee is the real party in interest.

After discharge, property that is neither abandoned nor administered—such as omitted claims, cause of actions and unscheduled property—remains property of the bankruptcy estate. 11 U.S.C. § 554(d). To effectuate the purpose of Chapter 7 and consistent with Rule 17's real-party-in-interest requirement, only the trustee possesses "standing on behalf of the estate to bring a pre-petition claim." *Wilson*, 717 F.3d at 343. For this reason, "[i]f a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim." *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.,* 187 F.3d 439, 441 (4th Cir. 1999) (citation omitted); *Capital Source Fin., LLC v. Delco Oil, Inc.,* 625 F. Supp. 2d 304, 310 (D. Md. 2007). Until the trustee abandons the cause of action "no one else has standing to pursue it." *See Ruppert,* 187 F.3d at 441.

Ms. Ludwig failed to identify any claims against Defendant in her schedules and these claims remain the property of the bankruptcy estate. As such, only the trustee may pursue these claims, and Ms. Ludwig's complaint should be dismissed for lack of standing. *See Lewis v. Antwerpen Hyundai of Clarksville*, No. CV RDB-18-1393, 2018 WL 5809708, at *4 (D. Md. Nov. 5, 2018) (debtor failed to identify claims and lacked standing).

### III. BECAUSE MS. LUDWIG FAILED TO DISCLOSE IN HER BANKRUPTCY ANY OF THE CLAIMS SHE NOW ADVANCES, JUDICIAL ESTOPPEL PRECLUDES THEM.

### A. Judicial estoppel may bar a claim where the debtor failed to disclose the claim to the bankruptcy court or has taken another inconsistent position.

Judicial estoppel protects the integrity of the court by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New*

*Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quotations omitted).  In applying equitable estoppel, courts consider: (1)  "whether the party's later position was clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party."  *Id.* at 750-51 (citations omitted).  Judicial estoppel applies when "the party who is alleged to be estopped intentionally misled the court to gain unfair advantage."  *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995) (quotation omitted).  Courts have barred Chapter 7 debtors from advancing claims omitted from their bankruptcy schedules.  *See e.g., Calafiore v. Werner Ents., Inc.*, 418 F. Supp. 2d 795, 797 (D. Md. 2006); *Robertson v. Flowers Baking Co. of Lynchburg, LLC*, 2012 WL 830097, at *4 (W.D. Va. Mar. 6, 2012), *aff'd,* 474 F. App'x 242 (4th Cir. 2012); *Vanerheyden v. Peninsula Airport Comm'n*, 2012 WL 6760107, at *4-5 (E.D. Va. Sept. 27, 2012).

### B. Ms. Ludwig's failure to disclose in her bankruptcy any of the instant claims is inconsistent with her position in this court.

Failing to disclose a potential claim as an asset is clearly inconsistent with the subsequent prosecution of an action in pursuit of that claim.  "A debtor's failure to list a claim in the mandatory bankruptcy filings is tantamount to a representation that no such claim existed."  *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1047 (8th Cir. 2006).

11

Ms. Ludwig's position in this court that she has five causes of action against Defendant—three intentional torts and two constitutional equal protection civil rights claims—is a factual assertion that is inconsistent with her previous position in the bankruptcy court that she had no contingent or unliquidated claims against Defendant. *Casto v. American Union Boiler Co. of West Virginia,* 2006 WL 660458, *3 (S.D. W.Va. March 14, 2006) ("By omitting his existing claim and potential claims from his disclosures, he averred to the bankruptcy court that no such claims existed.").

### C. Ms. Ludwig received a discharge from the bankruptcy court.

In granting Ms. Ludwig a discharge on December 29, 2020, the bankruptcy court accepted Ms. Ludwig's representations regarding her assets—that she had no contingent or unliquidated claims against Defendant—and treated the matter as a no asset case. Exhibit 6. "The court and creditors rely on the nondisclosure of an asset as an implicit denial (excluding assets *de minimis*) of the existence of the asset." *In re USinternetworking, Inc.*, 310 B.R. 274, 282 (Bankr. D. Md. 2004).

### D. Ms. Ludwig intentionally misled the court.

A debtor always has a motive to conceal her assets because disclosure shifts assets from the debtor to her creditors. But "the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205-06 (5th Cir. 1999). In assessing whether Ms. Ludwig's failure to disclose her claims "was intended to deceive" the court must consider the "specific facts and circumstances" of this case. *Martineau v. Wier*, 934 F.3d 385, 394 (4th Cir. 2019) (citing *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998)).

Ms. Ludwig was aware of the factual basis underpinning her intentional tort and constitutional claims before she filed her September 9, 2020 bankruptcy petition. All the operative facts are alleged to have occurred before that filing. *See generally Martineau*, 934 F.3d at 390. And yet, Ms. Ludwig did not include the facts underlying the alleged April 29, 2019 unlawful detention and sexual battery in her EEOC charge. Nor did she disclose any claim against Defendant arising out of those facts in her bankruptcy schedules.

These facts and claims were omitted from the EEOC charge and bankruptcy schedules even though Ms. Ludwig was represented before the EEOC and the bankruptcy court by counsel. She had the benefit of legal advice in formulating and electing not to amend her EEOC charge and in preparing and amending her bankruptcy schedules. That Ms. Ludwig later amended her schedules to value the "Claim for wrongful termination" at $50,000 and claim an exemption, yet she still failed to disclose any claims against Defendant, is instructive. Exhibit 5 at 12. She declared "under penalty of perjury" that the amended filing was "true and correct to the best of [her] information and belief." *Id.* at 13. She had a second opportunity to make a full disclosure but chose not to.

**IV.   ELEVENTH AMENDMENT IMMUNITY BARS COUNTS IV AND V.**

The two claims brought against Defendant in his official capacity—two constitutional equal protection claims (counts IV and V)—are barred by Eleventh Amendment immunity. The State, its agencies and officials are not susceptible to suit in federal court without a valid abrogation or waiver of the State's sovereign immunity. *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363 (2001). Here there has been neither Congressional abrogation of the states' sovereign immunity for claims brought

under 42 U.S.C. § 1983, nor waiver by the State of Maryland of its Eleventh Amendment immunity in federal court.

"The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73 (2000). "A State's constitutional interest in immunity encompasses not merely whether it may be sued, but *where* it may be sued." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984) (emphasis added). To override this immunity "Congress must 'mak[e] its intention to abrogate unmistakably clear in the language of [a pertinent] statute.'" *Coleman v. Court of Appeals of Maryland*, 566 U.S. 30, 35 (2012) (citation omitted). But 42 U.S.C. § 1983 contains no language evidencing such an intent. Nor has the State of Maryland enacted any statute waiving its Eleventh Amendment immunity in federal court for claims brought under 42 U.S.C. § 1983. *See e.g.*, *Pense v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 103 (4th Cir. 2019) (the state FEPA statute "does not constitute a consent to suit in federal court."). Thus, absent waiver or consent, the Eleventh Amendment bars all claims brought against the State through the vehicle of a 42 U.S.C. § 1983 action.

Because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," it is "no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). For that reason, Eleventh Amendment immunity also bars suits brought against state officers in their official capacities. *See, e.g., Fauconier v. Clarke*, 966 F.3d 265, 279–80 (4th Cir. 2020) (upholding Eleventh Amendment dismissal of equal protection claims

for damages brought against Virginia corrections officials); *In re Creative Goldsmiths of Washington, D.C., Inc., Debtor*, 119 F.3d 1140 (4th Cir. 1997) (treating Maryland State Comptroller as equivalent to the State of Maryland and dismissing the action on Eleventh Amendment grounds), *cert. denied*, 118 S. Ct. 1517 (1998).

Defendant is a state constitutional officer and, therefore, Counts IV and V that are brought against Defendant in his official capacity are barred by Eleventh Amendment immunity. *See* Md. Const. art. IV, § 5.

## CONCLUSION

For the above reasons, Defendant, Raymond G. Strubin, individually and in his official capacity, respectfully requests that the complaint be dismissed with prejudice.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

*/s/  Kevin M. Cox*
KEVIN M. COX
Assistant Attorney General
Bar No. 29012
200 St. Paul Pl, 20th Floor
Baltimore, Maryland  21202
(410) 576-6576 (telephone)
kcox@oag.state.md.us

*Attorneys for Defendant*